Adam M. Apton (State Bar No. 316506)
**LEVI & KORSINSKY LLP**
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Telephone: 415-373-1671
Facsimile: 212-363-7171
Email: aapton@zlk.com

*Counsel for Plaintiffs*

*[Additional Counsel listed on signature page]*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARIN BAUER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RAKUTEN USA, INC. and EBATES PERFORMANCE MARKETING, INC. d/b/a RAKUTEN REWARDS<br><br>Defendants. | CASE NO.:<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Karin Bauer (herein "Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this Class Action Complaint against Rakuten USA, Inc. and Ebates Performance Marketing, Inc. d/b/a Rakuten Rewards ("Ebates" and collectively with Rakuten, USA, Inc., "Rakuten" or "Defendants"). Plaintiff alleges the following upon information and belief based on the investigation of counsel, except as to those allegations that specifically pertain to each Plaintiff, which are alleged upon personal knowledge.

## INTRODUCTION

1.     Affiliated marketing is a cornerstone of modern digital advertising. Content creators, influencers, bloggers, and other marketers earn referral fees by promoting products and directing traffic via affiliate links (the "Affiliate Marketers").

2.      Affiliate links include unique tracking cookies or tags that identify the Affiliate Marketer as the source of the referral. Online retailers (the "Merchants") rely on tracking tags and affiliate marketing cookies to determine who gets credit for and referral fees from online referrals and product sales.

3.      The referral fees earned by the Affiliate Marketer is often a percentage of the sale value and is critical to the income of many Affiliate Marketers.

4.      The Rakuten Browser Extension undermines this system.

5.      Formerly known as Ebates, Rakuten developed a free Browser Extension offered to online consumers that purports to comb the Internet for coupons that can be applied to online purchases or confirm that the price the consumer sees is the best price available (the "Rakuten Browser Extension").

6.      Recent estimates have found that the Rakuten Browser Extension is installed on more than 4 million users' browsers.[1]

7.      The Rakuten Browser Extension's purported ability to quickly price check before purchases makes the Browser Extension appealing to consumers looking for a discount on a product they are already interested in purchasing and have already added to their online shopping cart.

8.      As described in more detail throughout this Complaint, when a consumer uses an affiliate link and subsequently uses the Rakuten Browser Extension to search for coupons, Rakuten replaces the Affiliate Marketer's cookie with its own, effectively taking credit for and stealing any resulting referral fee from the sale.

9.      Plaintiff is an Affiliate Marketer whose referral fees Rakuten has wrongfully misappropriated through its programming of the Rakuten Browser Extension.

10.     Plaintiff brings this proposed consumer class action individually and on behalf of all other members of the Classes (as defined herein), for damages and injunctive relief, seeking

---

[1] *Rakuten: Get Cash Back For Shopping*, GOOGLE CHROME WEB STORE, https://chromewebstore.google.com/detail/rakuten-get-cash-back-for/chhjbpecpncaggjpdakmflnfcopglcmi# (last visited Mar. 10, 2025).

CLASS ACTION COMPLAINT

an immediate end to Rakuten's abusive practices and for recompense for the harm that has already been done.

## JURISDICTION AND VENUE

11.     This Court has original jurisdiction over all causes of action herein under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because there are more than 100 members in the proposed Classes, Defendants are citizens of a different state than at least one member of the proposed Classes, and the matter in controversy exceeds the sum or value of $5,000,000.00, exclusive of interest and costs.

12.     This Court has personal jurisdiction over Defendants because: (1) Rakuten USA, Inc. has its principal headquarters in San Mateo, California; (2) Rakuten is authorized to do business and in fact regularly conducts and transacts business in the state of California; and/or (3) the claims alleged herein took place primarily in California, where Rakuten managed the operation of the Rakuten Browser Extension.

13.     Venue is proper in the Northern District of California pursuant to 28 U.S.C. § 1391 because Rakuten is a citizen of and maintains their principal place of business in this District.

## PARTIES

14.     Plaintiff Karin Bauer is a citizen of North Carolina and resides in Lenoir, North Carolina. Plaintiff Bauer is an Affiliate Marketer and shared her affiliate links to products or services on her Facebook (@kasage00) and LinkedIn (horse1971@live.com). For example, one such link (https://inst.cr/t/a81159ced) offered consumers a $10 referral credit on Instacart. In the past year, Plaintiff Bauer has made only $100.00 in referral fees for the affiliate marketing she has done.

15.     Defendant Rakuten USA, Inc., is a Delaware corporation, headquartered in San Mateo, California. Rakuten offers a range of online and digital services, including e-commerce, cashback rewards, digital content and financial technology solutions. Rakuten carries out substantial business operations across the United States.

CLASS ACTION COMPLAINT

16.     Defendant Ebates Performance Marketing, Inc., shares the same corporate headquarters in San Mateo, California and is a wholly owned subsidiary of Rakuten USA, Inc.

## FACTUAL BACKGROUND

### I.     The Affiliate Marketing Model

17.     With the rise of social media and increasing popularity of platforms like YouTube, Instagram, and TikTok, Merchants have turned to Affiliate Marketers, such as bloggers, podcasters, and influencers, to market their products to consumers.

18.     The affiliate marketing industry has grown into a massive market—in fact, it has grown 83 percent since 2017.[2] In 2023, referral marketing spending in the United States alone was approximately $9.56 billion, with likely spending of up to $15.8 billion by 2028.[3]

19.     Sales attributable to Affiliate Marketers are typically tracked through affiliate marketing cookies and/or tracking links.

20.     A cookie is a small text file that tracks a user's activity after clicking an affiliate marketer's link. The cookie stores information about the referring Affiliate Marketer and is used to determine whether the user makes a purchase. If the user does, the Affiliate Marketer receives a referral fee based upon that purchase.

21.     The last click attribution model, which credits the final touchpoint (or click) in the customer journey before a purchase—typically, the Affiliate Marketer's affiliate link—has emerged as an industry standard in this field.

22.     Affiliate Marketers' contractual business partners (the "Merchant Partners") regularly evaluate whether they are overperforming or underperforming regarding the Merchant Partner's benchmarks for customer acquisition. Merchant Partners track conversion rates (i.e.,

---

[2] Charlotte Muzzi, *Affiliate Marketing Statistics You Can't Ignore in 2024*, SHOPIFY (JUL. 21, 2024), https://www.shopify.com/blog/affiliate-marketing-statistics.
[3] *Affiliate Marketing 101: What it is and How to Get Started*, BIGCOMMERCE (Dec. 20, 2024), https://www.bigcommerce.com/articles/ecommerce/affiliate-marketing/.

CLASS ACTION COMPLAINT

how many potential customers make a purchase), click-through rates, return on investment (ROI), engagement metrics, among other Key Performance Indicators (KPIs).[4]

23.    If an Affiliate Marketer is overperforming on those metrics, a Merchant Partner is more likely to renew contracts with the Affiliate Marketer and offer better terms on future contracts. Conversely, if an Affiliate Marketer is underperforming, a Merchant Partner is less likely to renew contracts and offer better terms.

24.    The tracking of affiliate links therefore plays a crucial role in defining the future business relationships of Affiliate Marketers.

## II.    The Rakuten Browser Extension

25.    The Rakuten Browser Extension is an add-on compatible with nearly every major web browser. Adding it to a web browser is simple: by way of example, a Google Chrome user need only click "Add to Chrome" and the extension will be added:



 

*Figure 1 – Google Chrome Web Store page for the Rakuten Browser Extension*

---

[4] *See* Bharath Bhushan, *The 8 Most Essential Affiliate Marketing KPIs You Should Be Tracking in 2025*, WATI (Apr. 15, 2024), https://www.wati.io/blog/essential-affiliate-marketing-kpis/#:~:text=KPIs%20Measure%20Success:%20They%20allow,marketers%20make%20data%20%2Ddriven%20decisions.

26.     Once added, Rakuten becomes an "extension" of the browser, meaning it can add or change information for the user—e.g., install cookies or tracking tags on the website.

27.     When a user shops online, the Rakuten Browser Extension will automatically search for and apply coupons.

28.     When a user navigates to their online shopping cart, a Rakuten Browser Extension pop-up will appear, prompting the user to apply any coupons that Rakuten finds:



*Figure 2 – Demo of Rakuten Browser Extension Pop-Up in Online Shopping Cart*



*Figure 3 –Demo of the Rakuten Browser Extension testing coupons*

CLASS ACTION COMPLAINT

29.    The Rakuten Browser Extension will either find and apply any applicable coupons or inform the user that they already have the best price and prompt the user to continue to checkout.



*Figure 4 – Rakuten Browser Extension Pop-Up to Try Codes or Activate Rewards*

### III.    Rakuten's Exploitation of Last Click Attribution and Theft of Referral Fees from Affiliate Marketers

30.    Unbeknownst to Plaintiff and members of the Classes, Rakuten has been using the Rakuten Browser Extension to manipulate users' network transmissions to allow Rakuten to take credit for referral fees it did not earn.

31.    When a user activates the Rakuten Browser Extension during checkout, Rakuten replaces tracking tags that point to Affiliate Marketers as the source of the referral with its own tracking tags. This manipulation ensures that the referral fee for the purchase is redirected to Rakuten, even if an Affiliate Marketer's link was the original referral source.

CLASS ACTION COMPLAINT

32.    Using what is often referred to as the "developer mode" of a web browser, reading a browser's network traffic with a Rakuten Cashback Browser Extension installed reveals Rakuten's nefarious use of the Rakuten Browser Extension to steal an Affiliate Marketer's cookie, and ultimately an Affiliate Marketer's referral fee.

33.    First, a user watches an Affiliate Marketer's video and subsequently navigates to an affiliate link for a product promoted in the video. By way of example, the following screenshots use an affiliate link from the YouTuber, Mary Le (who currently has approximately 1.51k subscribers) for the Mejuri Bold Huggie Hoops.[5]



*Figure 5 – Affiliate links in the description of an Affiliate Marketer's YouTube video*

[5] Mary Le, *Spending over 2k on Mejuri Jewlry | spring haul !!*, Youtube (May 18, 2023), https://www.youtube.com/watch?v=2QYx81z8Lqs.

CLASS ACTION COMPLAINT

34.     The user is redirected to the Merchant's website where the Product is being sold. The URL includes a UTM tracking tag[6] labelled "116548" to tag the potential sale as originating from Mary Le.



*Figure 6 – Product URL after following Affiliate Marketer's affiliate link includes Affiliate Marketer's tracking tag*

35.     The tracking tag also saves on the user's browser in the form of a cookie, which follows the transaction through to checkout. The cookie's inclusion of "116548" ensures that Mary Le is credited for and receives referral fees on the sale.

---

[6] Specifically, the Urchin Tracking Module (UTM) code is a snippet of text added to the end of an URL that tracks the origin of referral traffic. Dana Nicole, *A Guide to UTM Code Parameters, Creation, & Tracking*, Semrush blog (July 29, 2024), https://www.semrush.com/blog/utm-tracking-codes-google-analytics/.

CLASS ACTION COMPLAINT



*Figure 7 – Cookie identifying the Affiliate Marketer as the referral source*[7]

36.    The Rakuten Browser Extension, as it is marketed, works near-instantaneously to search for and test coupon codes that may be applicable to the relevant purchase. The user is alerted to any coupon codes Rakuten finds, if any, and with a click of a button, can apply any codes to their shopping cart. If there are no codes, Rakuten will still prompt the user to activate rewards.



*Figure 8 – Rakuten Pop-Up on Merchant's Website*

---

[7] The _adal_ca cookie stores traffic source and campaign data and is used to determine which advertising campaign drove that visit to the website. *See Cookie Policy*, Oxfam, https://www.oxfam.org.uk/cookie-policy/ (last visited Jan. 28, 2025).

37.    But with that one click, unbeknownst to the user, Rakuten opens a hidden browser tab that removes the Karin Bauer tracking tag and cookie and replaces them with a Rakuten tracking tag and cookie, simulating a new referral.



*Figure 9 – The Rakuten Browser Extension's replacement of the Affiliate Marketer's tracking tag with "Rakuten Rewards"*

Figure 10 – The Rakuten Browser Extension's replacement of the Affiliate Marketer's affiliate cookie

38.    Despite it being Mary Le's promotion of the Product and affiliate link that led the user to the purchase, it is Rakuten that receives the referral fee on the sale, not Mary Le.

39.    Rakuten programmed the Rakuten Browser Extension to work in this way to simulate a new referral and effectively ensure that the last click attribution goes to them. As a result, Rakuten receives the entirety of the referral fee on the sale, stealing it away from the Affiliate Marketer who put in the heavy lifting to market the product or service.

**IV.    Damages and Harm**

40.    Plaintiff and Class Members were harmed by Rakuten's conduct because the Rakuten Browser Extension systematically steals referral fees from their rightful owners—i.e., the Affiliate Marketer who promoted and shared the affiliate link and generated the referral and ultimate sale of a product or service.

CLASS ACTION COMPLAINT

41.     The Rakuten Browser Extension is activated during millions of online purchases each year. In the absence of the Rakuten Browser Extension, Plaintiff and Class Members would have earned more money in the form of referral fees from their respective affiliate links.

42.     Plaintiff continues to devote time and energy to content creation to generate referral fees. Plaintiff accordingly faces future harm in the form of stolen referral fees because the Rakuten Browser Extension continues to steal affiliate marketing referral fees with each referred sale.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action on behalf of herself and as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), 23(b)(3), and 23(c)(4) on behalf of the following proposed Class and Subclass (collectively referred to hereinafter as the "Classes"):

**Nationwide Class (the "Class"):** All persons within the United States who participated in an affiliate marketing program with a United States Merchant and had referral fees diverted to Rakuten as a result of the Rakuten Browser Extension.

**North Carolina Subclass:** All persons within the state of North Carolina who participated in an affiliate marketing program with a United States Merchant and had referral fees diverted to Rakuten as a result of the Rakuten Browser Extension.

44.     Specifically excluded from the Classes are Defendants, their officers, directors, agents, trustees, parents, children, corporations, trusts, representatives, employees, principals, servants, partners, joint venturers, or entities controlled by Defendants, and their heirs, successors, assigns, or other persons or entities related to or affiliated with Defendants and/or their officers and/or directors, the judge assigned to this action, and any member of the judge's immediate family.

45.     Plaintiff reserves the right to amend the Class and Subclass definitions above if further investigation and/or discovery reveals that such definitions should be expanded, narrowed, divided into further subclasses, or otherwise modified in any way.

46.     The Classes satisfy the requirements of Federal Rules 23(a): numerosity, commonality, typicality, and adequacy.

CLASS ACTION COMPLAINT

47. **Numerosity**. The members of the Classes are so numerous that joinder of all members is impracticable. While the precise number of the members in each of the Classes is presently unknown, there are at least tens of thousands of members of the Classes, geographically dispersed throughout the United States such that joinder of all Class and Subclass Members is impracticable. There are at least thousands of members of the Classes such that joinder of all Class and Subclass Members is likewise impracticable.

48. **Commonality**.  Common questions of law and fact exist as to all members of the Classes. The common factual and legal questions include, but are not limited to, the following:

   a. Whether Defendants developed the Rakuten Browser Extension in a way that illegally usurps Class and Subclass Members' referral fees;

   b. Whether the scheme described herein results in Defendants being awarded referral fees it did not rightfully earn;

   c. Whether Defendants were unjustly enriched to the detriment of Plaintiff;

   d. Whether Defendants, through the actions alleged in this Complaint, violated consumer protection laws;

   e. Whether Defendants' misconduct alleged herein caused and continues to cause harm to members of the Classes;

   f. Whether Class and Subclass Members are entitled to injunctive and declaratory relief; and

   g. Whether Class and Subclass Members are entitled to damages and/or disgorgement of unjustly earned profits as a result of Defendants' misconduct.

49. **Typicality**. Plaintiff's claims are typical of the claims of the other members of the Classes in that the claims of Plaintiff and other members of the Classes are reasonably co-extensive and arise from the same course of wrongful conduct by Defendants.

50. **Adequacy of representation**. Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff has retained counsel highly experienced in complex consumer class action litigation, and Plaintiff intends to vigorously prosecute this action.

Further, Plaintiff has no interests that are antagonistic to those of the other members of the Classes.

51.     The Classes satisfy the requirements of Rule 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Classes as a whole, thereby making appropriate final declaratory and injunctive relief with respect to Class and Subclass Members as a whole.

52.     The Class and Subclass also satisfy the requirements of Federal Rules 23(b)(3): predominance and superiority.

53.     **Predominance**. The common issues identified above will predominate over any questions affecting only individual Class or Subclass Members. In particular, Defendants' liability will be determined by reference to the Rakuten Browser Extension's Terms of Service, as well as other common evidence in the form of Defendants' internal records, including financial records, and databases storing information concerning the display of every coupon code to every user, including the date of display, the identity of the user, the identity of the retailer, and the amount paid by the retailer to Defendants for the coupon code.

54.     **Superiority**. A class action is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class or Subclass Members is relatively small compared to the burden and expense that would be involved in individual litigation of their claims against Defendants. It would, thus, be virtually impossible for the Class or Subclass Members, on an individual basis, to obtain effective redress for the wrongs committed against them. Furthermore, individualized litigation would create the danger of inconsistent or contradictory judgments arising from the same set of facts. Individualized litigation would also increase the delay and expense to all parties and the court system from the issues raised by this action.  By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, economies of scale, and comprehensive supervision by a single United States District Court, and presents no unusual management difficulties under the circumstances presented in this case.

55.    Alternatively, at a minimum, particular common issues are appropriate for class treatment under Rule 23(c)(4).

## CAUSES OF ACTION

### COUNT I
### VIOLATION OF THE ELECTRONIC COMMUNICATIONS PRIVACY ACT
### 18 U.S.C. §§ 2510, *et seq.*
### (On Behalf of Plaintiff and the Class)

56.    Plaintiff, individually and on behalf of the members of the Class, incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

57.    The Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §§ 2510, *et seq.*, prohibits the intentional interception of any wire, oral, or electronic communications without the consent of at least one authorized party to the communication.

58.    The ECPA confers a civil private right of action to "any person whose wire, oral, or electronic communication is intercepted, disclose, or intentionally used in violation of this chapter." 18 U.S.C. § 2520(a).

59.    The ECPA defines "intercept" as "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." 18 U.S.C. § 2510(4).

60.    The ECPA defined "contents" as "includ[ing] any information concerning the substance, purport, or meaning of that communication." 18 U.S.C. § 2510(8).

61.    The ECPA defines "person" as "any employee, or agent of the United States or any State or political subdivision thereof, and any individual, partnership, association, joint stock company, trust, or corporation." 18 U.S.C. § 2510(6).

62.    The Wiretap Act defines "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photo optical system that affects interstate or foreign commerce . . . ." 18 U.S.C. § 2510(12).

63.    Defendants are each a person for the purposes of the ECPA.

CLASS ACTION COMPLAINT

64.    Affiliate Marketers' unique tracking tags and affiliate cookies are electronic communications for the purposes of the ECPA.

65.    By allowing the Rakuten Browser Extension to intercept Affiliate Marketers' tracking tags and affiliate cookies on consumers' web browsers, Defendants intentionally intercepted and/or endeavored to intercept the contents of electronic communications in violation of the ECPA.

66.    No party to the electronic communications alleged herein consented to Defendants' interception and subsequent manipulation of the electronic communications. Nor could any party consent because Defendants' acts were surreptitious.

67.    Defendants intercepted electronic communications with a criminal or tortious intent. Defendants' interception of electronic communications was part of Defendants' tortious practice of converting commissions and interfering with Plaintiff's and Class Members' economic advantage and contractual relations, and is also in violation of federal and state laws, including the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

68.    Defendants violated the ECPA each time they intercepted Plaintiff's and Class Members' electronic communications via the Rakuten Browser Extension.

69.    Plaintiff and members of the Class have been damaged due to the unauthorized interception, disclosure, and use of their confidential communications in violation of 18 U.S.C. § 2520. As such, Plaintiff and members of the Class are entitled to: (1) damages, in an amount to be determined at trial, assessed as the greater of (a) the sum of the actual damages suffered by Plaintiff and members of the Class and any profits made by Defendants as a result of the violation, or (b) statutory damages of whichever is the greater of $100 per day per violation or $10,000; (2) appropriate equitable or declaratory relief; and (3) reasonable attorneys' fees and other litigation expenses.

**COUNT II**
**VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT**
**18 U.S.C. §§ 1030, *et seq.***
**(On Behalf of Plaintiff and the Class)**

70.    Plaintiff, individually and on behalf of the members of the Class, incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

71.    The Computer Fraud and Abuse Act ("CFAA") makes it unlawful to "intentionally access[] a computer without authorization or exceed authorized access, and thereby obtain . . . information from [the] protected computer." 18 U.S.C. § 1030(a)(2)(C).

72.    The CFAA provides a private right of action to "[a]ny person who suffers damage or loss by reason of a violation of this section[.]" 18 U.S.C. § 1030(g).

73.    Consumers' computers are used in interstate and foreign commerce or communication.

74.    Defendants violated the CFAA by knowingly, and with intent to defraud Plaintiff and Class Members, accessing cookies on consumers' browsers containing Plaintiff and Class Members' tracking tags and affiliate cookies and altering that data without authorization or by exceeding authorized access via the Rakuten Browser Extension.

75.    Defendants' access was without authorization or in excess of authorized access, because Defendants' manipulation of cookies on consumers' computers and subsequent theft of Plaintiff and Class Members' was done surreptitiously.

76.    Plaintiff and Class Members have suffered damage and loss, aggregating at least $5,000 in value in any 1-year period during the relevant period, including, without limitation, their earned referral fees, as a result of Defendants' violation of the CFAA.

77.    Defendants' unlawful access to and theft of Plaintiff's and Class Members' referral fees through unauthorized access of the cookies on consumers' computers caused Plaintiff and Class Members irreparable injury. Unless restrained and enjoined, Defendants will continue such acts. Plaintiff's and Class Members' remedies at law are not adequate to compensate them for these threatened injuries, entitling Plaintiff and Class Members to remedies including injunctive relief provided by 18 U.S.C. 18 § 1030(g).

CLASS ACTION COMPLAINT

**COUNT III**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class)**

78.    Plaintiff, individually and on behalf of the members of the Class, incorporate by reference the allegations contained in the paragraphs above as if set forth fully herein.

79.    Plaintiff and members of the Class lack an adequate remedy at law.

80.    Plaintiff and members of the Class have an interest, both legal and equitable, in the referral fees wrongfully taken by Defendants. These payments were rightfully earned by Plaintiff and Class Members, not Defendants.

81.    Substantial benefits have been conferred on Defendants by Plaintiff and the members of the Class through the referral fees that were credited to Rakuten through the Rakuten Browser Extension wrongfully claiming credit for referral fees via last click attribution.

82.    Defendants either knew or should have known that the referral fees were given with the expectation that the referral fees emanated from Plaintiff's and Class Members' respective affiliated marketing links. As such it would be inequitable for Defendants to retain the benefit of the referral fees under these circumstances.

83.    But for Defendants' unjust and improper use of the Rakuten Browser Extension, Plaintiff and Class Members would not have had their referral fees diverted.

84.    Defendants' unjust enrichment is traceable to and resulted directly and proximately from the conduct alleged herein, including by using the Rakuten Browser Extension to wrongfully credit themselves with referral fees they did not rightfully earn.

85.    Defendants continue to benefit from their wrongful practices, and profit through their use of the Rakuten Browser Extension, to the clear detriment of Plaintiff and Class Members.

86.    The benefit conferred upon, received, and enjoyed by Defendants was not conferred officiously or gratuitously. Defendants' acceptance and retention of the benefits of the referral fees from Plaintiff and the Class Members under the circumstances alleged herein make it inequitable and unjust for the Defendants to retain the profits and benefits for its wrongful conduct, which should be restored to Plaintiff and Class Members.

87. Plaintiff and Class Members are entitled to recover from Defendants all the amounts wrongfully collected and improperly retained by the Defendants, plus interest thereon.

**COUNT IV**
**TORTIOUS INTERFERENCE WITH CONTRACTUAL RELATIONS**
**(On Behalf of Plaintiff and the Class)**

88. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

89. Plaintiff and Class Members are engaged in contracts or ongoing business relationships with their Merchant Partners. Plaintiff and Class Members drive customers to merchant stores through affiliate links, and in return, Merchants provide Plaintiff and Class Members with referral fees. These contracts and economic relationships are ongoing.

90. Defendants knew that Plaintiff and Class Members worked to drive customers to their Merchant Partners' websites through affiliate links. Defendants knew that Plaintiff and Class Members received their referral fees based on associated unique affiliate cookies, and that Merchants assessed the success of their affiliate partnerships based on these cookies. In short, Defendants knew these contractual and business relationships existed.

91. Defendants intentionally disrupted Plaintiff and Class Members' performance of their contractual and business obligations, or knew that their actions made performance more expensive, difficult, or impossible. Defendants knew that their conduct would appropriate referral fees from Plaintiff and Class Members, thereby causing Plaintiff and Class Members to appear to Merchant Partners to underperform relative to actual customer acquisition.

92. Plaintiff and Class Members were harmed by Defendants' conduct because the Rakuten Browser Extension functions to deprive them of the referral fees they rightfully earned as the true drivers of the sales.

93. As a direct and proximate result of Defendants' conduct, Plaintiff and Class Members suffered economic injury by depriving them of referral fees they should have earned through their affiliate links.

94. Accordingly, Defendants are liable to Plaintiff and Class Members for damages in an amount to be determined at trial.

## COUNT V
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (On Behalf of Plaintiff and All Members of the Class)

95. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

96. Plaintiff and Class Members are engaged in an economic relationship with Merchants by referring their followers to those Merchants through affiliate links. In return, Merchants provide Plaintiff and Class Members with referral fees.

97. Defendants have knowledge of this economic relationship.

98. Through the use of the Rakuten Browser Extension, Defendants divert referral fees from Plaintiff and Class Members who promoted and shared an affiliate link to generate the referral and ultimate sale of a Merchant's product or service.

99. Defendants either intended to usurp referral fees from Plaintiff and Class Members though the conduct alleged herein or knew that its conduct would appropriate referral fees from Plaintiff and Class Members.

100. As a direct and proximate result of this intentional and substantial interference with the prospective economic advantage, Plaintiff and Class Members have suffered actual damages, which includes, but is not limited to the wrongful loss of referral fees which emanated from their affiliate links.

101. Plaintiff and Class Members are entitled to recover actual damages, consequential damages, punitive damages, injunctive relief, attorneys' fees, costs, and any other relief that the Court deems appropriate.

## COUNT VI
## CONVERSION
### (On Behalf of Plaintiff and the Class)

102. Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

103.    Plaintiff and Class Members were entitled to acquire referral fees of concrete, readily identifiable amounts, on account of their referral codes of consumers to the products and services offered by Merchants.

104.    Defendants intentionally and substantially interfered with Plaintiff's and Class Members' economic advantage by wrongfully replacing the cookie associated with Plaintiff's and Class Members' with its own cookie, through the Rakuten Browser Extension. This deprived Plaintiff and Class Members of their interest in the referral fees.

105.    Defendants, without proper justification and authorization, assumed and exercised ownership over these referral fees, in hostility to the rights of Plaintiff and Class Members.

106.    Plaintiff and Class Members neither assented to nor ratified Defendants' interference with their referral fees.

107.    Defendants' wrongful exercise of control over Plaintiff's and Class Members' personal property constitutes conversion.

108.    As a direct and proximate result of Defendants' conversion, Plaintiff and Class Members were harmed as a result and will be continued to be harmed through the ongoing use of the Rakuten Browser Extension.

109.    Defendants are liable to Plaintiff and Class Members for damages and costs permitted by law, and to injunctive relief to halt future conversion by Defendants through their ongoing conduct.

**COUNT VII**
**VIOLATION OF NORTH CAROLINA UNFAIR TRADE PRACTICES ACT**
**N.C. Gen. Stat. Ann §§ 75-1.1, *et seq.***
**(On Behalf of Plaintiff and the North Carolina Subclass)**

110.    Plaintiff incorporates by reference the allegations contained in the paragraphs above as if set forth fully herein.

111.    Defendants advertised, offered, or sold good or services in North Carolina and engaged in commerce directly or indirectly affecting the people of North Carolina, as defined by N.C. Gen. Stat. Ann. § 75-1.1(b)**.**

CLASS ACTION COMPLAINT

112.    Defendants engaged in unfair and deceptive acts and practices in or affecting commerce, in violation of N.C. Gen. Stat. Ann. § 75-1.1, including their practices relating to the Rakuten Browser Extension's replacing of Plaintiff's and North Carolina Subclass Members' affiliate cookie with their own to divert Plaintiff's and North Carolina Subclass Members' commission payments to themselves.

113.    Defendants' representations and omissions were material because they were likely to deceive reasonable consumers about who their purchases were benefiting. Consumers are unaware that their actions benefit Defendants at the expense of Affiliate Marketers.

114.    Defendants acted intentionally, knowingly, and maliciously to violate North Carolina's Unfair Trade Practices Act, and recklessly disregarded Plaintiff's and North Carolina Subclass Members' rights.

115.    As a direct and proximate result of Defendants' unfair and deceptive acts and practices, Plaintiff and North Carolina Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, as described herein, including loss of their earned commission payments and referral fees.

116.    Defendants' conduct as alleged herein was continuous, such that after the first violations of the provisions pled herein, each week that the violations continued constitute separate offenses pursuant to N.C. Ge. Stat. Ann. § 75-8.

117.    Plaintiff seeks all monetary and non-monetary relief allowed by law, including actual damages, treble damages, and attorneys' fees and costs.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seek judgment against Defendants, as follows:

(a)   An order declaring this action to be a proper class action, appointing Plaintiff and her counsel to represent the Classes, and requiring Defendants to bear the costs of class notice;

(b)   An order enjoining Defendants;

(c)   An order awarding declaratory relief, and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

(d)   An order requiring Defendants to pay restitution to restore all funds acquired by means of any act or practice declared by this Court to be unlawful, unfair, or fraudulent business act or practice, or a violation of law, plus pre- and post-judgment interest thereon;

(e)   An order requiring Defendants to disgorge or return all moneys, revenues, and profits obtained by means of any wrongful or unlawful act or practice;

(f)   An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein, in an amount to be determined by this Court, but at least $5,000,000;

(g)   An order requiring Defendants to pay punitive damages on any count so allowable;

(h)   An order awarding attorneys' fees and costs to Plaintiff and the Classes; and

(i)   An order providing for all other such equitable relief as may be just and proper.

CLASS ACTION COMPLAINT

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury of all issues so triable.

Dated: March 11, 2025

Respectfully submitted,

**LEVI & KORSINSKY, LLP**

By: _/s/ Adam M. Apton_

Adam M. Apton (State Bar No. 316506)
1160 Battery Street East, Suite 100
San Francisco, CA 94111
Telephone: 415-373-1671
Facsimile: 212-363-7171
Email: aapton@zlk.com


Mark S. Reich*
Alyssa Tolentino*
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 17th Floor
New York, NY 10004
Telephone: (212) 363-7500
Facsimile: (212) 363-7171
Email: mreich@zlk.com
Email: atolentino@zlk.com

*Counsel for Plaintiff*

*\*pro hac vice* forthcoming

CLASS ACTION COMPLAINT